# IN THE UNITED STATES DISTRICT COURT FOR THE
# WESTERN DISTRICT OF MISSOURI
# SOUTHERN DIVISION

| | | |
|---|---|---|
| SHERRY LYNN BROWNING, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 6:18-CV-03013-DGK-SSA |
| | ) | |
| NANCY A. BERRYHILL, | ) | |
| Acting Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

## ORDER AFFIRMING THE COMMISSIONER'S DECISION

Plaintiff Sherry Lynn Browning ("Plaintiff") petitions for review of an adverse decision by Defendant, the Acting Commissioner of Social Security ("Commissioner"). Plaintiff applied for disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401-434. The Administrative Law Judge ("ALJ") determined Plaintiff retained the residual functional capacity ("RFC") to perform other work as a production assembler and swatch clerk and was not disabled.

After carefully reviewing the record and the parties' arguments, the Court finds the ALJ's decision is supported by substantial evidence. The Commissioner's decision is AFFIRMED.

**Procedural and Factual Background**

The complete facts and arguments are presented in the parties' briefs and are repeated here only to the extent necessary.

Plaintiff filed her application on April 7, 2015, alleging a disability onset date of March 9, 2015. The Commissioner denied the application at the initial claim level, and Plaintiff appealed the denial to an ALJ. The ALJ held a hearing, and on January 12, 2017, found Plaintiff was not disabled. The Appeals Council denied Plaintiff's request for a review on November 30, 2017.

Plaintiff has exhausted all administrative remedies and judicial review is now appropriate under 42 U.S.C. § 405(g).

## Standard of Review

A federal court's review of the Commissioner's decision to deny disability benefits is limited to determining whether the Commissioner's findings are supported by substantial evidence on the record as a whole. *Andrews v. Colvin*, 791 F.3d 923, 928 (8th Cir. 2015). Substantial evidence is less than a preponderance, but enough evidence that a reasonable mind would find it sufficient to support the Commissioner's decision. *Id.* In making this assessment, the court considers evidence that detracts from the Commissioner's decision, as well as evidence that supports it. *Id.* The court must "defer heavily" to the Commissioner's findings and conclusions. *Wright v. Colvin*, 789 F.3d 847, 852 (8th Cir. 2015). The court may reverse the Commissioner's decision only if it falls outside of the available zone of choice, and a decision is not outside this zone simply because the evidence also points to an alternate outcome. *Buckner v. Astrue*, 646 F.3d 549, 556 (8th Cir. 2011).

## Discussion

The Commissioner follows a five-step sequential evaluation process[1] to determine whether a claimant is disabled, that is, unable to engage in any substantial gainful activity by reason of a medically determinable impairment that has lasted or can be expected to last for a continuous period of at least twelve months. 42 U.S.C. § 423(d)(1)(A).

---

[1] "The five-step sequence involves determining whether (1) a claimant's work activity, if any, amounts to substantial gainful activity; (2) his impairments, alone or combined, are medically severe; (3) his severe impairments meet or medically equal a listed impairment; (4) his residual functional capacity precludes his past relevant work; and (5) his residual functional capacity permits an adjustment to any other work. The evaluation process ends if a determination of disabled or not disabled can be made at any step." *Kemp ex rel. Kemp v. Colvin*, 743 F.3d 630, 632 n.1 (8th Cir. 2014); *see* 20 C.F.R. § 404.1520(a)–(g). Through Step Four of the analysis the claimant bears the burden of showing that he is disabled. After the analysis reaches Step Five, the burden shifts to the Commissioner to show that there are other jobs in the economy that the claimant can perform. *King v. Astrue*, 564 F.3d 978, 979 n.2 (8th Cir. 2009).

Plaintiff alleges the ALJ erred at Step Four by giving little weight to two of her treating physicians' opinions that her conditions would require her to be absent from work frequently. Plaintiff also contends the ALJ erred at Step Four by giving no weight to her former supervisors' questionnaires that she was often absent from work. Lastly, Plaintiff claims the Commissioner failed to meet his burden at Step Five to show that Plaintiff can perform other work. These arguments are unavailing.

I. **The ALJ properly weighed the opinions of Plaintiff's treating physicians and former supervisors.**

First, Plaintiff argues the ALJ's RFC is deficient because it fails to address Plaintiff's purported absenteeism due to her disabling conditions. Specifically, Plaintiff alleges the ALJ erred by giving little weight to the opinions of her treating physicians, Joseph Mayus, M.D., and Usha P. Manusmare, M.D., that Plaintiff could not maintain regular attendance at work.

A treating physician's opinion will generally be given controlling weight when "it is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record." *Cline v. Colvin*, 771 F.3d 1098, 1103 (8th Cir. 2014) (alteration in original). But such weight is not automatic, and the ALJ must still evaluate the record as a whole. *Id*. "Where an ALJ assigns less than controlling weight to the opinion of a treating source, the ALJ must 'give good reasons' for doing so." *Chesser v. Berryhill*, 858 F.3d 1161, 1164 (8th Cir. 2017) (citing *Anderson v. Astrue*, 696 F.3d 790, 793 (8th Cir. 2012)). "Good reasons for assigning lesser weight to the opinion of a treating source exist where the treating physician's opinions are themselves inconsistent, or where other medical assessments are supported by better or more thorough medical evidence." *Id*. (internal citations and quotations omitted).

Here, the ALJ gave little weight to Dr. Mayus' opinion that Plaintiff would need unscheduled breaks two-to-four times per day and would be absent more than four days per month because of her medical problems. R. at 872. The ALJ did so because he found that Dr. Mayus' opinion was not only inconsistent with his own treatment notes, but also with the record as a whole. This finding is supported by the record.

Dr. Mayus' treatment notes reveal Plaintiff was able to stand and walk with a stable gait and climb on and off the examination table. R. at 804, 808, 818-19. Dr. Mayus' notes also indicate that Plaintiff was well-developed and in no acute distress, had clear breath sounds, no joint swelling, normal movement in her shoulders, symmetrical flexion and no swelling in her knees, and had a full range of motion in her hips without pain. R. at 804, 808, 818-19, 823. These treatment notes are consistent with the rest of the record, which show that Plaintiff had normal sensory examinations, normal bilateral stretch reflexes, no joint tenderness or swelling, no muscle weakness, and normal gait. R. at 641, 648, 655, 663, 669, 708. Finally, Dr. Mayus recommended Plaintiff return for follow-up visits between six weeks to four months, suggesting that Plaintiff's symptoms are not as limiting as Dr. Mayus' alleged. The ALJ did not err in affording Dr. Mayus' opinion little weight.

Plaintiff also alleges the ALJ erred in giving little weight to Dr. Mansumare's opinion that Plaintiff had marked limitations maintaining regular attendance or completing a normal workday or workweek without interruptions. R. at 534-37. Like Dr. Mayus, the ALJ found Dr. Mansumare's opinion was inconsistent with his treatment notes. For example, although Dr. Mansumare opined that Plaintiff had marked limitations maintaining attention and concentration, Dr. Mansumare's treatment notes show that not only did Plaintiff have a normal memory and an adequate attention span, but also that she was alert and oriented, made good eye

4

contact, had linear thought processes, fair insight and judgment, and was motivated for treatment. R. at 831, 834, 837, 840-41, 843, 846, 849-50, 853. In fact, Dr. Mansumare's treatment notes from the same day he performed his Medical Source Statement showed all these findings. R. at 834. Further, despite giving these limitations, Dr. Mansumare made no recommendation for aggressive care or treatment and simply advised Plaintiff to return to his clinic in three months. R. at 22, 835. Given the inconsistencies between Dr. Mansumare's treatment notes and his opinion, the ALJ did not err in assigning his opinion little weight.

Plaintiff alternatively argues that even if Dr. Mansumare's and Dr. Mayus' opinions were entitled to little weight, the ALJ erred by not discussing each factor set forth in 20 C.F.R. § 404.1527(c)(2). But the ALJ is not required to specifically discuss each factor in his decision. Rather, when the ALJ discounts or disregards a treating physician's opinion, the ALJ is to consider these factors and then give good reasons for discounting the opinion. *See* 20 C.F.R. § 404.1527(c)(2) ("We will always give good reasons in our notice of determination or decision for the weight we give your treating source's opinion."); *Anderson v. Astrue*, 696 F.3d 790, 793 (8th Cir. 2012) ("Ultimately, the ALJ must 'give good reasons' to explain the weight given the treating physician's opinion."). Here, the ALJ considered these factors, noted the treating relationships of these two specialists, and analyzed the consistency of their opinions with the record before giving good reasons for affording these doctors' opinions little weight. R. at 22-23. The ALJ committed no error.

Finally, Plaintiff alleges the ALJ erroneously failed to take into account her former supervisors' employment questionnaires, which indicate Plaintiff was often absent at work. R. at 202-07. But the questionnaires were specific to her previous job as a phlebotomist, which the ALJ determined she could no longer perform. R. at 24. The questionnaires were also related to

5

Plaintiff's breathing problems, which have improved. R. at 203-06. The RFC took into account Plaintiff's breathing limitations, and the ALJ did not err by disregarding these reports.

**II.     The Commissioner met his burden of proving Plaintiff could perform other work.**

Plaintiff also alleges the Commissioner failed to meet his burden at Step Five of proving Plaintiff could perform other work. Once the ALJ determined Plaintiff could not return to any past relevant work, the burden shifted to the Commissioner to show Plaintiff could perform other work existing in significant numbers in the national economy. *King*, 564 F.3d at 979 n.2. The Commissioner met that burden by relying on the testimony of a vocational expert ("VE") about a hypothetical claimant with Plaintiff's RFC. The ALJ asked the VE a properly phrased hypothetical question which incorporated the eventual RFC finding. R. at 905-06. The vocational expert testified that a hypothetical claimant with Plaintiff's RFC could work as a production assembler or swatch clerk, which had 30,000 and 15,000 jobs in the national economy, respectively. R. at 905-06.

Plaintiff argues she is precluded from doing these jobs because their descriptions in the *Dictionary of Occupational Titles* ("DOT") conflict with the RFC. Specifically, Plaintiff argues the job of swatch clerk conflicts with her RFC restriction that she can only have infrequent contact with the public.

This argument is incorrect as a factual matter. The job description for a swatch clerk in the DOT states:

> Collects cloth samples (swatches) from cutting rooms and marks each lot to identify webs (bolts) of cloth from which samples were cut. Files and keeps inventory of swatch cards that are used to show prospective customers available fabrics. Mails swatches to customers on request. Checks swatch cards prepared by outside firm to ensure conformance to original order.

*DOT* § 222.587-050, 1991 WL 672126 (4th ed. Rev. 1991) (swatch clerk). The description shows that a swatch clerk does not have contact with the public by showing the swatches to customers, and instead merely maintains inventory. Indeed, "People" is listed as not significant in the job description and "Talking" is listed as not present. *DOT*, 1991 WL 672126. Put simply, there is no conflict between the DOT description and the RFC, and the ALJ committed no error by relying on the VE's opinion that Plaintiff could perform work as a swatch clerk. Hence, the Commissioner met his burden at Step Five of showing Plaintiff could perform other work existing in significant numbers in the national economy. *Johnson v. Chater*, 108 F.3d 178, 180 (8th Cir. 1997) (holding that showing of 10,000 jobs in the national economy is a sufficiently significant number).

Because Plaintiff could perform work as a swatch clerk—a job existing in significant numbers in the national economy—the Court need not determine whether Plaintiff could also perform work as a production assembler. Any error in finding Plaintiff could work as a production assembler was harmless. *Hepp v. Astrue*, 511 F.3d 798, 806 (8th Cir. 2008).

## Conclusion

Substantial evidence in the record supports Plaintiff's RFC and the ALJ finding that Plaintiff is capable of performing other work. The Commissioner's decision is AFFIRMED.

**IT IS SO ORDERED.**

Date:   January 14, 2019                 /s/ Greg Kays
                                         GREG KAYS, CHIEF JUDGE
                                         UNITED STATES DISTRICT COURT